# EXHIBIT B

# REAL ESTATE SERVICES AGREEMENT

This Real Estate Services Agreement including the Schedules attached hereto (collectively the "Agreement") is made as of October 22, 2026 (the "Agreement Date"), by and between **GA Real Estate Group, LLC** ("GA Group") with its principal place of business at 1 North Franklin Street, Suite 1150, Chicago, IL 60606 and **Jami Nimeroff, Esq.**, solely in her capacity as interim chapter 7 trustee (the "Trustee") in the bankruptcy cases filed by Mystic Woods LLC, River City Realty Fund LLC, Waycross Realty Fund LLC and Wilmington Realty LLC (collectively, the "Debtors"), c/o Mark E. Felger, Cozen O'Connor, 1201 North Market Street, Suite 100, Wilmington, DE 19801 (each a "Party" and collectively the "Parties").

WITNESSETH:

**WHEREAS**, on September 28, 2026 (the "Petition Date"), the Debtors commenced bankruptcy cases (collectively, the "Bankruptcy Cases") by filing voluntary petitions for relief under chapter 7 of title 11 of the United States Code (11 U.S.C. § 101 *et seq.* (the "Bankruptcy Code")) in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court");

**WHEREAS**, the Trustee is the duly-appointed chapter 7 trustee of the estates in the Bankruptcy Cases (collectively, the "Estates");

**WHEREAS**, the Trustee desires to retain GA Group to provide the services described below for the owned real property set forth on Schedule A (collectively, the "Property"); and

**WHEREAS**, GA Group is a licensed real estate broker, experienced in the listing and marketing real estate similar to the Property; and

**WHEREAS**, the Parties desire to enter into this Agreement, all on the terms and conditions set forth herein.

**NOW THEREFORE**, in consideration of the mutual covenants and conditions contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1. Scope. In accordance with the terms and conditions of this Agreement, GA Group will provide the following services (the "Services"), to the extent requested by the Trustee and appropriate:

   a) consult with the Trustee to discuss the Trustee's goals, objectives and financial parameters in relation to the Property;

   b) market the Property for sale and/or lease on terms desired by the Trustee;

c) report periodically, but in any event as often as reasonably requested by the Trustee, to the Trustee regarding the status of the Services and details related thereto; and

d) such other services as may be enumerated in the Application (as defined below).

2. Term of Agreement; Termination; Survival. This Agreement shall be for a term of one (1) year beginning on the Agreement Date (the "Term"). Notwithstanding the foregoing, either Party may cancel this Agreement upon ten (10) days' prior written notice to the other Party in accordance with the notice provision below, provided that the Trustee shall not terminate this Agreement during the first ninety (90) days hereof, except for cause. If GA Group becomes unable to perform its duties as a result of a legal, contractual or regulatory restriction, GA Group shall have the right to terminate this Agreement with immediate effect. Any rights or obligations incurred or accrued by either Party prior to termination shall survive termination of this Agreement. The parties' rights and obligations pursuant to this Section 2, Section 3 and Sections 15 – 32 shall survive the termination or expiration of this Agreement.

3. Compensation. For each sale of a Property, GA Group shall earn and be paid a fee of three and three quarters of one percent (3.75%) of the gross proceeds of such sale (each, a "Fee" and, collectively, "Fees"). GA Group shall earn the Fee upon the consummation of each sale of the applicable Property. Each such Fee, together with all applicable expenses with respect to such sale of a Property as have been previously approved by the Trustee in writing, shall be due and payable immediately upon closing of the relevant Property sale. If GA Group recognizes an outside broker representing the purchaser in a transaction for which a commission is payable hereunder, GA Group will advise such broker that it must look to its own client for payment of any and all compensation which may become due it for the proposed transaction. It is acknowledged and agreed that in no event whatsoever shall the Trustee be required to pay any commission to any outside broker. Notwithstanding the foregoing, the Parties agree that the timing of any payment shall be subject to approval of the underlying Property sales by the Bankruptcy Court.

4. Bankruptcy Court Approval.

A. Within five (5) business days of the execution of this Agreement, the Trustee will file an application ("Application") to employ GA Group, on the terms set forth in this Agreement, and utilize her best efforts to ensure that such Application is approved by an order (the "Approval Order") that provides, among other things, as follows: (i) approval of GA Group's retention pursuant to the terms of this Agreement; (ii) the reimbursement of expenses hereunder to GA Group in accordance with this Agreement and, subject to approval of the underlying Property sales, the payment of all fees hereunder to GA Group in accordance with this

Agreement; (iii) authorizing the Trustee to take such further actions as are necessary or appropriate to carry out the terms and conditions of this Agreement; and (iv) authorizing the Trustee and GA Group to negotiate additional engagement letters, or Amendments to this Agreement, regarding the marketing and sale of additional assets of the Estates with notice to be provided to parties in interest but without the need for additional motions or applications. In so agreeing to seek an Approval Order, the Trustee acknowledges that she believes that GA Group's general real estate restructuring experience and expertise, its knowledge of the real estate markets and its real estate capabilities will inure to the benefit of the Trustee and the Estates pursuing any Property sales, that the value to the Trustee and the Estates of GA Group's services derives in substantial part from that expertise and experience and that, accordingly, the structure and amount of the contingent compensation is reasonable regardless of the number of hours to be expended by GA Group's professionals in the performance of the services to be provided hereunder.

B. The Trustee will provide GA Group with a copy of the pleadings in connection with requesting any Approval Order prior to submission to the Bankruptcy Court for GA Group's review and comment (without limiting the foregoing, the Trustee shall use best efforts to give GA Group at least two (2) days' prior notice of such filing) and advise GA Group of any objection or hearings pertaining to GA Group's retention. Any Approval Order must be acceptable to GA Group and the continuation of GA Group's obligations hereunder will be conditioned upon the grant of such order. If an acceptable Approval Order is not obtained within 60 days from the date that it is filed, either Party shall have the right to terminate this Agreement at any time thereafter. Further, if an Approval Order is not obtained authorizing GA Group's services and fees as set forth herein, the Trustee agrees to amend the Application in conjunction with, and with approval from, GA Group and request a hearing to review the Application. In the event that the Trustee is unable to obtain an acceptable Approval Order, and the Agreement is terminated or rejected, GA Group reserves the right to assert a claim in the Bankruptcy Cases for any services performed prior to such termination or rejection.

5. <u>Additional Services</u>. GA Group may provide additional services requested by the Trustee that are not otherwise specifically provided for in this Agreement. Any additional services will be mutually agreed upon in writing in advance by the Parties.

6. <u>Use of Third Party Brokers</u>. The Trustee hereby: (a) authorizes GA Group to retain the services of third party brokers, as GA Group deems necessary in the performance of its Services; and (b) agrees and acknowledges that GA Group may provide certain of its services hereunder through one or more affiliates or agents; *provided, however, that* neither the Trustee nor the Estates shall be liable for any amounts that may be due to such third party brokers or affiliates or agents.

7. Recordkeeping. The Services to be provided by GA Group pursuant to this Agreement are, in general, transactional in nature. Accordingly, GA Group will not bill the Trustee by the hour or maintain time records.

8. Expenses and Disbursements. GA Group shall not be responsible for any transactional costs and/or legal expenses incurred the Trustee in connection with its retention and Services. Subject to prior approval in writing by the Trustee for any individual expense in excess of $500.00 (the "Preapproval Threshold"), the Trustee shall reimburse GA Group, out of the Estates' assets, for GA Group's reasonable out-of-pocket expenses (including, but not limited to, legal, mailing, marketing and travel expenses) incurred in connection with its retention and Services.

9. Exclusive. During the duration of this Agreement, GA Group shall have the sole and exclusive authority to perform the Services for the Trustee and the Estates. The Trustee agrees to forward all relevant inquiries regarding the Property made to the Trustee or of which the Trustee becomes aware to GA Group. In the event that during the Term of this Agreement the Trustee hires a third party or the Trustee consummates a sale or lease of the Property, GA Group shall still be compensated in accordance with the terms of this Agreement.

The Trustee acknowledges that GA Group may be engaged to provide the same or similar services as those referenced herein to other persons or entities, including successful bidders of the Property, and that any such engagement shall not constitute or be deemed to be a violation of this Agreement, provided that it is not contrary to the interests of the Trustee or the Estates. GA Group will promptly notify the Trustee of any potential conflicts. In the event that any representation of or employment by any third party results in GA Group becoming ineligible for employment under section 327 of the Bankruptcy Code, this Agreement and GA Group's employment by the Trustee shall be terminated.

10. Cooperation. To the extent in her possession, the Trustee shall make available to GA Group all information concerning the Property necessary for the performance of its obligations hereunder, including, but not limited to, the current rents, taxes and other charges, copies of tenant leases, the premise sizes, the commencement and expiration dates of tenant leases, any tenant lease options, up to date tenant contact information and such other information as GA Group reasonably requests for the performance of its Services.

All information provided by the Trustee to GA Group, including but not limited to the information referenced above, shall collectively be referred to as "Estate Information". It is understood and agreed by the Parties that GA Group shall have no obligation to verify the accuracy of such information, that the incompleteness or inaccuracy of the Estate Information may affect GA Group's Services and that GA Group shall have no liability whatsoever resulting from, whether directly or indirectly, the inaccuracy or incompleteness of the Estate Information. Both Parties understand and agree that GA Group shall base its Services on the Estate

Information and any material inaccuracies, discrepancies or omissions in the Estate Information may affect the Services provided, including but not limited to, a delay in the provision of the Services. Furthermore, both Parties understand and agree that the commencement of this Agreement as well as GA Group's performance of its Services is contingent upon GA Group's receipt of the requested Estate Information.

11. No Authority to Execute Agreements. GA Group shall have no right or power to enter into any agreement in the name of or on behalf of the Trustee or to otherwise obligate the Trustee in any manner unless authorized in a writing (that has not been revoked) signed by the Trustee.

12. Approval of Contracts. Subject to approval by the Bankruptcy Court to the extent required under the Bankruptcy Code, all of the terms and conditions of each sale, lease or any other agreement involving the Property shall be subject to approval by the Trustee, which approval may be withheld in the Trustee's sole and absolute discretion.

13. Meetings and Written Reports. After the commencement of this Agreement, GA Group shall meet with, in a manner agreed to by the Parties, the Trustee to review the Trustee's goals, objectives and financial parameters. Thereafter, GA Group will meet with or participate in telephone conferences with the Trustee regarding the status of the Services as mutually agreed to by the Parties. Provided however, that GA Group's failure to perform one of more of the tasks described immediately above shall not be a bar to GA Group being otherwise entitled to its compensation hereunder.

14. Disclosures/Reports. All information, advice, recommendations or other content of any reports, presentations or other communications that GA Group provides under the terms of this Agreement are solely for the benefit of the Trustee. All opinions and advice (written or oral) given by GA Group to the Trustee in connection with this Agreement are intended solely for the benefit and use of the Trustee and no such opinion or advice shall be used for any other purpose, or reproduced, disseminated, quoted or referred to at any time, in any manner, or for any purpose, other than as reasonably necessary for the efficient administration of the Estate or as otherwise provided herein, without the prior written consent of GA Group.

If the Trustee receives a subpoena, summons or court order by any federal, state or other regulatory agency having jurisdiction over the Trustee relating in any respect to GA Group or its Services, the Trustee shall promptly notify GA Group, if legally permissible, so that GA Group may obtain, at its sole cost, a protective order for such information. If GA Group is unable to obtain a protective order and the Trustee is required to provide information regarding GA Group and/or the Services, the Trustee agree to provide only that information which is legally required and to

use reasonable efforts to obtain confidential treatment of such information/documentation.

15. Independent Contractor; No Fiduciary Duty. The Trustee acknowledges and agrees that she is a sophisticated party. Each Party acknowledges and agrees that the arrangements contemplated herein are and will be for the provision of the Services and that nothing contained herein shall create or be construed as creating a contract or other arrangement of employment between the Trustee and GA Group. GA Group shall provide the Services under this Agreement as an independent contractor and not, in any other capacity, including, but not limited to, as an employee, agent, partner, fiduciary, or joint venture of the Trustee, except as required by law with respect to GA Group. Any duties arising out of GA Group's engagement shall be contractual in nature and shall be owed solely to the Trustee. Each Party disclaims any intention to impose any fiduciary duty on the other Party.

16. Non-Circumvention. The Trustee hereby covenants and agrees that it shall not take any action to avoid or seek to avoid the observance or performance of any of the terms of this Agreement, and will at all times in good faith carry out all of the provisions of this Agreement and take all action as may be reasonably required to protect the rights of GA Group herein.

17. Assignment. Neither Party may delegate or assign its or her rights and obligations under this Agreement in whole or in part to an unaffiliated third party without the prior written consent of the other Party, which consent may be withheld in such Party's sole and absolute discretion.

18. Representations, Warranties and Covenants. Subject to Bankruptcy Court approval: (a) each Party has all requisite power and authority to enter into this Agreement; and (b) this Agreement has been validly authorized by all necessary corporate action and constitutes a legal, valid and binding agreement of the Trustee and GA Group. Each Party represents that this Agreement does not and will not violate any applicable law or conflict with any agreement, instrument, judgment, order or decree to which it is a party or by which it is bound. Furthermore, each Party represents and agrees that it will comply with all applicable laws, rules, regulations, orders or decrees during the term of this Agreement in performing its obligations hereunder. Each Party represents that the person signing this Agreement has the requisite authority to enter into this Agreement and can bind the respective Party.

19. Survival of Compensation. Except to the extent that the Bankruptcy Court determines that GA Group is not eligible for such compensation, in the event that within six (6) months following the termination or expiration of this Agreement, the Trustee or her successors or assigns consummates a sale of a Property or sends or receives a proposal with respect to a sale of a Property, and such sale is subsequently consummated, GA Group shall, upon consummation thereof, be paid

the Fee to which GA Group would have been entitled pursuant to the terms of this Agreement had the Agreement not terminated or expired.

20. Intellectual Property. GA Group may use data, software, designs, utilities, tools, models, systems and other methodologies that it owns or licenses in performing the Services hereunder. Notwithstanding the delivery of any reports by GA Group to the Trustee, GA Group shall retain all intellectual property rights in such materials (including any improvements or knowledge developed while performing the Services) and in any working papers compiled in connection with the Services. The Trustee agrees that GA Group will have the right and ability to use, during the Term, any name, trademark, logo, or other intellectual property of the Estates, solely in connection with the Services and for the purposes of advertising sales of the Properties, and otherwise conducting such sales in accordance with the terms of the Agreement. Moreover, the Trustee agrees that GA Group will have the right and ability to use any name, trademark, logo, or other intellectual property of the Estates for the purpose of announcements, press releases and advertisements related to the completion of the transactions contemplated herein, including the right to disclose to any person that it provided services to the Trustee and a general description of such services (e.g., reproduction of the hyperlink to its website), but shall not provide any other information about its involvement with the Trustee.

21. Limitation on Liability. GA Group shall not be liable if it is unable to perform its responsibilities hereunder as a result of events beyond its control. Except to the extent arising out of the gross negligence or willful misconduct of the liable party: (a) neither party shall be responsible for any indirect, incidental, consequential, exemplary, punitive or other special damages (including, but not limited to, loss of profits and damage to reputation or business) arising under or by reason of this Agreement, the Services or any act or omission hereunder; and (b) GA Group's liability for a default or breach of this Agreement shall not exceed the amount of fees paid to GA Group hereunder.

22. Beneficiaries. This Agreement shall inure to the sole and exclusive benefit of GA Group and the Trustee and their respective successors and representatives. The obligations and liabilities under this Agreement shall be binding upon GA Group and the Trustee.

23. Amendments; Modifications. Subject to Bankruptcy Court approval, if necessary or appropriate, this Agreement may be modified or amended, or its provisions waived, only in a writing signed by each of the Parties hereto.

24. Severability. If any portion of this Agreement shall be held or made unenforceable or invalid by a statute, rule, regulation, decision of a tribunal or otherwise, the remainder of this Agreement shall not be affected thereby and shall remain in full force and effect, and, to the fullest extent, the provisions of this Agreement shall be severable.

25. Entire Agreement. This Agreement constitutes the entire Agreement between the Parties and supersedes and cancels any and all prior or contemporaneous arrangements, understandings and agreements, written or oral, between them relating to the subject matter hereof.

26. Counterpart Execution/Facsimile and Electronic Signatures. This Agreement may be executed in counterparts, each of which shall be deemed an original, but which together shall be considered a single instrument. Facsimile and .pdf signatures to this Agreement shall be acceptable and binding.

27. Notices. Unless otherwise expressly provided herein or waived in writing by the Party to whom notice is given, any notice or other communication required or permitted hereunder will be effective if given in writing (i) when delivered by hand; (ii) three days after sent by certified mail, return receipt requested; (iii) when delivered by electronic email communication to the email address set forth below and verified by confirmed receipt; or (iv) one day after delivery to a commercial overnight courier, and addressed to the Parties as follows:

| | |
|---|---|
| To the Trustee: | Jami Nimeroff, Esq.<br>c/o Mark E. Felger<br>Cozen O'Connor<br>1201 North Market Street, Suite 100<br>Wilmington, DE 19801<br>Email: nimeroff@dech7trustee.com;<br>MFelger@cozen.com |
| To GA Group: | GA Real Estate Group, LLC<br>1 North Franklin Street, Suite 1150<br>Chicago, IL 60606<br>Attn: Al Lieberman<br>Tel: 847-284-8256<br>Email: alieberman@gagroup.com |

28. Governing Law, Waiver of Trial by Jury. This Agreement and all aspects of the relationship created hereby and any other agreements relating hereto shall be governed by and construed in accordance with the laws of the State of Delaware applicable to contracts made and to be performed therein and, in connection therewith, the Parties hereto consent to the exclusive jurisdiction of the Bankruptcy Court and agrees to venue in such court. GA GROUP AND THE TRUSTEE EACH HEREBY AGREES TO WAIVE ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO ANY CLAIM, COUNTERCLAIM OR ACTION ARISING OUT OF OR RELATING TO THIS AGREEMENT.

29. Headings. The descriptive headings of the paragraphs, subparagraphs and Appendixes of this Agreement are inserted for convenience only, do not constitute

a part of this Agreement and shall not affect in any way the meaning or interpretations of this Agreement.

30. Interpretation. No provision of this Agreement will be interpreted in favor of, or against, any of the Parties hereto by reason of the extent to which any such party or its counsel participated in the drafting thereof or by reason of the extent to which any such provision is inconsistent with any prior draft hereof or thereof.

31. Publicity**.** The Trustee agrees that, when this engagement is completed, GA Group will have the right to disclose to any person that it provided services to the Trustee and a general description of such services (e.g., reproduction of the hyperlink to its website), but shall not provide any other information about its involvement with the Trustee.

32. Non-Discrimination. It is illegal for Trustee, the Company or GA Group to refuse to show, display, lease or sell to any person because of race, color, religion, national origin, sex, ancestry, age, marital status, physical or mental disability familial status, pregnancy, sexual orientation, including but not limited to gender identity, unfavorable discharge from the military service, military status, order of protection status, an arrest record or any other class protected by Article 3 of the Illinois Human Rights Act.

[The Remainder of this Page is Intentionally Left Blank]

IN WITNESS WHEREOF, the Parties have caused this Agreement to be executed by their respective duly authorized representatives effective as of this Agreement Date.

Jami Nimeroff, Esq., solely in her capacity as chapter 7 trustee in the Bankruptcy Cases of Mystic Woods LLC, River City Realty Fund LLC, Waycross Realty Fund LLC and Wilmington Realty LLC

By: ______________________________
Name______________________________
Title______________________________

GA Real Estate Group, LLC

By: ______________________________
Name: ______________________________
Title: ______________________________

IN WITNESS WHEREOF, the Parties have caused this Agreement to be executed by their respective duly authorized representatives effective as of this Agreement Date.

Jami Nimeroff, Esq., solely in her capacity as chapter 7 trustee in the Bankruptcy Cases of Mystic Woods LLC, River City Realty Fund LLC, Waycross Realty Fund LLC and Wilmington Realty LLC

By: [signature]
Name Jami B. Nimeroff
Title Interim Chapter 7 Trustee

GA Real Estate Group, LLC

By: ____________________
Name: ____________________
Title: ____________________

**SCHEDULE A**

| Property | Location | Asset Type | Size |
|---|---|---|---|
| Mystic Woods Apartments | Tallahassee, FL | Multifamily | 23 units |
| Waycross Mobile Home Park | Waycross, GA | Mobile Home Park | 38 homes |
| Wilmington Apartments | Wilmington, NC | Multifamily | 16 units |
| River City Mobile Home Park | Jacksonville, NC | Mobile Home Park | 84 homes |